UNITED STATES DISTICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL PERKINS,

        PLAINTIFF,

   -against-

CHRISTAIN VALENZUELA, ANTHONY
LAFEMINA; JACKSON; JOSEPH HICKEY;
KEENEN ADAM-EDWARDS; DIAZ-MOJICA;
JOHN DOE #1,

           DEFENDANTS.

AMENDED

CIVIL RIGHTS COMPLAINT
42 U.S.C. § 1983

DOCKET No.: 17-cv-423
(RRM) (CLP)

JURY TRAIL DEMANDED
YES (X)   NO ( )

I. Previous Lawsuit:

A. Have you began other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment? Yes (X)   No ( )

B. If your answer to A is yes, describe each lawsuit in space below:
1. Parties to this previous lawsuit:
   Plaintiff: Michael Perkins
   Defendants: City of New York; Valenzuela; LaFemina; Jackson; John Doe #1 and John Doe #2.

2. Court: United States District Court: Eastern District of New York.

3. Docket Number: 17-cv-423

4. Name of Judge to whom case was assigned: Roslynn R. Mauskopf.

5. Disposition: It is still pending.

6. Approximate date of filing lawsuit: On or about the 14th day of November, 2016.

7. Approximate date of disposition: June 20, 2017.

II.   Place of Present Confinement: Downstate Correctional Facility, Box F, Red School House Road, Fishkill, New York 12524-0445.

   A. Is there a prisoner grievance procedure in this institution? Yes (x) No ( )

   B. Did you present the facts relating to your complaint in the prisoner grievance procedure? Yes ( ) No (x)

   C. If your answer is Yes,
      1. what steps did you take?
      2. what was the result?

   D. If your answer is No, explain why not: this civil complaint is not a facility issue.

   E. If there is no prison grievance procedure in the institution, did you complain to prison authorities? Yes ( ) No (x)

   F. If your answer is Yes,
      1. what steps did you take?
      2. what was the result?

III.   Parties:

   A. Name of Plaintiff: Michael Perkins #17-A-4183

   B. Defendant No.1: Police Officer Christain Valenzuela #19271
      77th Precient at 127 Utica Avenue
      Brooklyn, New York

   C. Defendant No. 2: Police Officer Anthony Lafemina #11439
      77th Precient at 127 Utica Avenue
      Brooklyn, New York

   D. Defendant No. 3: Police Officer Jackson (Sergeant)
      77th Precient at 127 Utica Avenue
      Brooklyn, New York

   E. Defendant No.4: Detective Joseph Hickey
      77th Precient at 127 Utica Avenue

(2)

Brooklyn, New York

F. Defendant No. 5: Police Officer Keenen Adam-Edwards #10378
77th Precinct at 127 Utica Avenue
Brooklyn, New York

G. Defendant No. 6: Police Officer Johnathan Diaz-Mojica #14105
77th Precinct at 127 Utica Avenue
Brooklyn, New York

H. Defendant No. 7:   John Doe #1 (Police Officer)
77th Precinct at 127 Utica Avenue
Brooklyn, New York

IV   Statement of Claim:

On or about the 9th day of August, 2015, there was an alleged robbery of an individual by the name of Jordan Card and police officer's Valenzuela #19271; Adam-Edwards #10378; and Diaz-Mojica #14105 at approximately 1815 hours (and at two other different times unknown to the Plaintiff, but before 1900 hours) violated the Plaintiff's 14th Amendment Rights of the United States Constitution by repeatedly showing a drunk Jordan Card a single photograph of the Plaintiff and asking Jordan Card if the Plaintiff robbed him, which constitute suggestive identification. (See: Exhibit "A" hereto annexed)

On or about the 9th day of August, 2015, police officer LaFemina #11439 violated the Plaintiff's right of due process and equal protection of the laws (14th Amendment of the United States Constitution) by showing Jordan Card an photo array at approximately 1900 hours (Fourtyfive minutes) after police officer's Valenzuela #19271; Adam-Edwards #10378; and Diaz-Mojica #14105 showed Jordan Card the single photo of the Plaintiff and police officer LaFemina #11439 placed the single photograph of the Plaintiff in slot number four of the photo array. (See: Exhibit "B" hereto annexed)

On or about the 9th day of August, 2015, police officer Keenen Adam-Edwards #10378 falsified a police report and charges against the Plaintiff by stating that the Plaintiff was in

(3)

possession of a box-cutter, and continued to lie during his testimony of the Wade Hearing, without any proof to support the bogus allegation. (See: Exhibit "C" hereto annexed)

On or about the 9th day of August, 2015, police officer Johnathan Diaz-Mojica #14105 falsified a police report and the charges against the Plaintiff by stating that the Plaintiff robbed Jordan Card at knife point, and continued to lie during his testimony of the Wade Hearing, without any proof to support the bogus allegation. (See: Exhibit "D" hereto annexed)

However, if the Court would review Jordan Card's grand jury testimony the Court would see that Jordan Card states he never seen a weapon or any other object. (See: Exhibit "E" hereto annexed)

On or about the 22nd day of August, 2015, at approximately 1745 hours the Plaintiff provided the police officer LaFemina #11439 with his attorney's information and invoked his right to counsel, but yet the Plaintiff was denied his right to counsel in violation of his 6th Amendment Rights of the United States Constitution. (See: Exhibit "F" hereto annexed)

On or about the 23rd day of August, 2015, police officer LaFemina #11439 attempted to have the Plaintiff partake in a police line-up voluntarily without providing the Plaintiff with his attorney, and when the Plaintiff refused to partake freely in the police line-up police officer LaFemina #11439 and several other police officers assaulted the Plaintiff and forced the Plaintiff to partake in said police line-up by handcuffing the Plaintiff to the wall and placing leg irons on the Plaintiffs ankles (in full restraints) in violation of the Plaintiffs 8th and 14th Amendment Rights of the United States Constitution, and forced the Plaintiff to sit in position number four just as he placed the single photograph of the Plaintiff in slot number four of the photo array. (See: Exhibit "G" hereto annexed)

While the Plaintiff was in full restraints, he was forced to sit in a bent position, and during the viewing of the suggestive police line-up Detective Joseph Hickey came into the line-up area and placed the Plaintiff in a head-lock and lefted the Plaintiff's head, and this was done while Jordan Card (complaining witness) was viewing the line-up, (See: Exhibit "H" hereto annexed) which constitutes the violation of the Plaintiffs 8th and 14th Amendment Rights of the United States Constitution.

Defendant Jackson (Sergeant) actions of failing to properly supervise his subordinates amounts to dereliction of duty, which

makes him just as guilty of violating the Plaintiff's rights as the police officer's whom committed the violations in his presence.

## II. Relief:

The Plaintiff seeks the total sum of $5,500,000.00 (Five Million Fivehundred thousand) dollars in actual damages and, $11,000,000.00 (Eleven Million) dollars in punitive damages.

I declare under the penalty of perjury that on the 23rd day of ___October___, 2017, I delivered this complaint to prison authorities to be duly mailed via the United States Postal Service to the Honorable Judge: Roslynn R. Maushoph of the United States District Court: Eastern District of New York at 225 Cadman Plaza East, Brooklyn, New York 11201.

Signed this ___23rd___ day of ___October___, 2017, I declare under the penalty of perjury that the foregoing is true and correct.

Sign: _____

Michael Perkins # 17-A-4183
Downstate Correctional Facility
Box F
Red School House Road
Fishkill, New York 12524-0445

EXHIBIT "A"

Case 1:17-cv-00423-RRM-CLP   Document ... Filed ... Page 8 of 41

| COMPLAINT - FOLLOW UP INFORMATIONAL REPORT - INTERVIEW IN-PERSON | | Crime/Condition ROBBERY | Command 077-77TH PRECINCT Date of This Report 08/09/2015 |
|---|---|---|---|

| Date of UF61 08/09/2015 | Date Case Assigned 08/09/2015 | | Complaint No. 2015-077-05050 | Case No. 2015 - 406 | Unit Reporting BRAM | Follow-Up No. 2 |
|---|---|---|---|---|---|---|

| Topic/Subject (INTERVIEW IN-PERSON) INTERVIEW OF C/V | Activity Date 08/09/2015 | Activity Time 18:15 |
|---|---|---|

| Complainant's Name CARD, JORDAN | | Address | Apt No. |
|---|---|---|---|
| Nickname/Alias/Middle Name | | | |
| Sex MALE | Race WHITE | Date of Birth | Age |
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |

| Person Interviewed Last Name, First M.I. CARD, JORDAN | | Address | Apt No. |
|---|---|---|---|
| Nickname/Alias/Middle Name | | | |
| Position/Relationship | Sex MALE | Race | Date of Birth | Age |
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |

**Details**

Summary of Investigation:
1. On August 9, 2015, at approximately 1815 hours I did conduct an in person interview with the c/v Jordan Card at the 77 BRAM office. The c/v stated the following to me in essence:

Jordan stated he was walking s/p on Franklin Ave from 348 Franklin Ave ( One Last Shag Bar)

Responding officers did show c/v 1 a picture of the possible perp and asked Jordan is this the guy and the c/v acknowledged "Yes".

Perp- Male black, lazy eye, 5'8 5'9 180lbs, facial hair
C/V 1 contact-

2. Submitted for your information

| Activity Address Location OFFICE | | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|---|
| Cross Street | | | Intersection of and | | | Premise Type |

| Reporting Officer: | Rank POM | Name ANTHONY LAFEMINA | Tax Reg. No. | Command 297-77 DET SQUAD |
|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed 06/27/2015 | Date of Next Review | Name PATRICK HAMILTON | Supv. Tax No. |

1    Q    Did Officer Adams-Edwards show you a photograph?

2    A    Yes, he did.

3    Q    Now, do you see anyone in the courtroom that resembles

4    the photograph that you were shown that day?

5    A    Yes, I do.

6    Q    Can you please indicate that person by an article of

7    clothing he or she is wearing?

8    A    Yes, it's a black male with a light blue shirt.

9         THE COURT:  Indicating the defendant.

10   Q    Now, after Officer Adams-Edwards showed you that

11   photograph what did you do?

12   A    I showed it to Mr. Card.

13   Q    Before you showed Mr. Card the photograph did you ask

14   him any questions?

15   A    I said was this the guy he was with.

16        THE COURT:  Wait a minute.  One second.  Go ahead.

17   Q    Do you know if Officer Adams-Edwards or Officer

18   Valenzuela spoke to Mr. Card before you did?

19   A    At that point in time I didn't.

20   Q    And so what was the question that you asked Mr. Card?

21   A    I asked him was this the guy who did it.

22        THE COURT:  Well, you said a minute ago you said

23   is this the guy you were with.  Which one is it?

24        THE WITNESS:  Was this the guy you were with, is

25   he the one who did it.



EXHIBIT "B"

Complaint# 2015-077-05050                                                Page 9 of 41

| COMPLAINT - FOLLOW UP INFORMATIONAL REPORT - PHOTO ARRAY | | Crime/Condition ROBBERY | Command 077-77TH PRECINCT Date of This Report 08/09/2015 |
|---|---|---|---|
| Date of UF61 08/09/2015 | Date Case Assigned 08/09/2015 | Complaint No. 2015-077-05050 | Case No. 2015 - 406 | Unit Reporting BRAM | Follow-Up No. 3 |

| Topic/Subject (PHOTO ARRAY) C/V JORDAN CARD VIEWING OF PHOTO ARRAY | Activity Date 08/09/2015 | Activity Time 19:00 |
|---|---|---|

| Complainant's Name CARD, JORDAN | Address | Apt No. |
|---|---|---|

Nickname/Alias/Middle Name

| Sex MALE | Race WHITE | Date of Birth | Age |
|---|---|---|---|
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |

| Person Interviewed Last Name, First M.I. CARD, JORDAN | Address | Apt No. |
|---|---|---|

Nickname/Alias/Middle Name

| Position/Relationship | Sex | Race | Date of Birth | Age |
|---|---|---|---|---|
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |

**Details**

Summary of Investigation:
1. On August 9, 2015, at approximately 1600 hours CV Jordan Card and I were present at 77 Pct Detective Squad. I did to show a photo array of suspect Michael Perkins // NYSID# 04431767P to C/V Jordan Card in regards to this Investigation. The photo array was produced through the Photo Manager system. Prior to the showing of the photo array I read the instructions verbatim from the Photo Array Pre-Viewing Instructions Report. The victim then placed his initials on the bottom of the form.

I presented the C/V a closed letter size manila envelope containing one photo array. I then asked the C/V if he recognized anyone in the Photo Array? The C/V stated "Yes". I then asked "What is the number of the photograph of the person that you recognize?" The C/V stated "Number 4". I then asked "From where do you recognize that person?" The C/V stated "The person that robbed me". The C/V then signed and circled the Photo Array under position #4. The c/v then signed dated and time stamped the Photo Array Viewing Report. I instructed the C/V verbatim "Do not discuss with any other witnesses or victims what you observed or said or did during this identification procedure".

2. The following documents are attached to the case folder:

-Photo Array Pre-Viewing Instructions Report
-Photo Array Viewing Report
-Photo Array Information Report
-Photo Array
-Photo Manager System produced Photo Array Report

3. Submitted for your information.

| Activity Address Location OFFICE | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|
| Cross Street | | Intersection of and | | Premise Type |

| ATTACHMENT | | | |
|---|---|---|---|
| No | Attachment | | Description |
| 1 | 1439165727458_150809201430-1580843.pdf | | |

| Reporting Officer: | Rank POM | Name ANTHONY LAFEMINA | Tax Reg. No. | Command 297-77 DET SQUAD |
|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed 08/10/2015 | Date of Next Review | Name JOHN JACKSON | Supv. Tax No. |

 

# NEW YORK CITY POLICE DEPARTMENT

### Photo Array

   

ARREST DATE:

ARREST ID#:

NYSID #:

ARREST DATE:

ARREST ID#:

NYSID #:

ARREST DATE:

ARREST ID#:

NYSID #:



   

ARREST DATE:      05/14/2015

ARREST ID#:        K15635766

NYSID #:            04431787P

ARREST DATE:

ARREST ID#:

NYSID #:

ARREST DATE:

ARREST ID#:

NYSID #:

EXHIBIT "C"

P.O.  ADAMS-EDWARDS/RAMEAU/CROSS

1    though nowhere in your memo book is that documented?

2       A    That's correct.

3       Q    That's something that you recall?

4       A    I do recall.

5       Q    You remember my client specifically?

6       A    Yes, ma'am.

7       Q    What color pants did he have on that night?

8       A    Don't recall.

9       Q    What color shirt?

10      A    To tell you the truth, the pants that he wore, from

11   what I remember, it was a green camouflage pants.

12      Q    You just told me you didn't remember.

13      A    Well, as I'm recalling and as I'm talking to you

14   right now, I have a better recollection of what pants he was

15   wearing that night.

16      Q    You remember that all of a sudden --

17      A    Yes, ma'am.

18      Q    Let me finish my question; okay?

19           So, just after telling me that you didn't remember,

20   all of a sudden you had a recollection of it?

21      A    Yes, ma'am, I do.

22      Q    I see.  What color shirt was he wearing?

23      A    He was wearing a black shirt.

24      Q    What color shoes was he wearing?

25      A    I don't remember the shoes he was wearing because I

1   wasn't looking at his feet.

2        Q      What did you have for breakfast that day?

3               MR. MYCO:   Objection, your Honor.

4               THE COURT:   Sustained.  Sustained.  Stop.

5        Q      Did you testify that Jordan Card told you that my

6   client was a good guy?

7               MR. MYCO:   Objection, your Honor.

8        Q      (Continuing)  Was that your testimony?

9               MS. RAMEAU:   I'm just clarifying the testimony.

10              THE COURT:   It's sustained as to form.  Just

11  rephrase your question.

12       Q      What exactly did Jordan Card tell you about my

13  client while he was standing there waiting?

14       A      Who is Jordan Card?

15       Q      Well, the witness, the complaining witness.

16       A      (No response).

17       Q      (Continuing)  The guy with the blond hair.

18       A      There was multiple complainants in this case.  Who

19  exactly are you talking about?

20       Q      The white guy with the blond hair, that one.

21       A      That individual that I said that I stopped

22  alongside with your client?

23       Q      Right?

24       A      Oh, him.  Yes, he did tell me that.

25       Q      Now, you didn't -- you testified you didn't produce

1   any police paperwork; right?

2        A    I did not have any police paperwork at the time.

3        Q    And your testimony is that he was wearing

4   camouflage pants?

5        A    Yes, green camouflage.

6        Q    And in terms of tops, what did he have on, I'm

7   sorry?

8        A    Black shirt.

9             MS. RAMEAU:   I see.

10            May I have a moment, your Honor?

11            THE COURT:   Yes, go ahead.

12            (Whereupon, there was a pause in the proceedings.)

13       Q    So, it's fair to say you exited the car with your

14   partner, right, simultaneously, when you first saw my client

15   walking alongside that white man with blond hair; right?

16       A    Yes, ma'am.

17       Q    Did you take the ID or did your partner?

18       A    I took the I.D.

19       Q    I see.  And how long exactly did it take your

20   partner to run my client's name?

21       A    I would say, three to four minutes.

22       Q    And how long did the entire process take, meaning,

23   the running of the name, the writing of the summons?  How

24   long did that take?

25       A    I would say, five to seven minutes.

1          THE COURT:    Any cross-examination?

2          MS. RAMEAU:    Yes, your Honor.

3   CROSS-EXAMINATION

4   BY MS. RAMEAU:

5       Q    Now, where exactly in your memo book did you

6   document the fact that you saw a box cutter in my client's

7   pocket?

8          MR. MYCO:    Objection, your Honor.

9          THE COURT:    Overruled.

10      A    I did not document it.

11      Q    Okay.  Did you create any other police reports

12  related to this case?

13      A    No.

14      Q    Now, this incident took place almost two years ago;

15  right?

16      A    Yes.

17      Q    It's fair to say that since August 9th of 2015, you

18  have participated in a number of arrests; right?

19      A    Yes.

20      Q    You frisked a number of individuals; right?

21      A    That's right.

22      Q    How many would you say?

23      A    (no response).

24      Q    Just take a wild guess.

25      A    I can't really make an approximation.

1      THE COURT:    Is there an objection?

2      MR. MYCO:    Objection.  Beyond the scope.

3   Q     Maybe a hundred?

4      MR. MYCO:    Objection, your Honor.

5      THE COURT:    Sustained.  That's sustained.

6   Rephrase your question.  It's a wild guess.

7   Q     How many individuals have you stopped and frisked

8   since August 9th of 2015?

9      MR. MYCO:    Objection, your Honor.  Beyond the

10      scope.

11      THE COURT:    Overruled.

12   A     I can't really approximate.  I would say a good

13   number, a good amount.

14   Q     You would say more than a hundred?

15   A     I would clearly say more than a hundred.

16   Q     More than two hundred?

17   A     Not sure.

18   Q     More than three hundred?

19   A     Not sure, ma'am.

20   Q     But, it's somewhere along that line; right, along

21   those lines?

22      MR. MYCO:    Objection, your Honor.

23      THE COURT:    Sustained.

24   Q     So, your testimony is that somehow you remember

25   specifically seeing a box cutter in my client's pocket even

EXHIBIT "D"

1    Q    Understood.  And when you spoke with him he told you a

2    series of things about the evening, right?

3    A    Yes.

4    Q    He told you that he was robbed at knife point, right?

5    A    Yes.

6    Q    He also told you that whoever robbed him made certain

7    threatening gestures and threatened serious physical injuries,

8    threatened him rather with serious physical injuries, correct?

9    A    That's correct.

10         MS. CLARKSON:  Objection.  This is outside of the

11   scope of the hearing, your Honor.

12         THE COURT:  Overruled.

13         MS. RAMEAU:  Nothing further, your Honor.

14         THE COURT:  Any redirect?

15         MS. CLARKSON:  Very briefly, your Honor.

16   REDIRECT EXAMINATION

17   BY MR. CLARKSON:

18   Q    You were asked on cross-examination about showing a

19   photograph to Mr. Card.  Where did you get that photograph from?

20   A    Officer Valenzuela and Adams-Edwards showed it to me.

21   Q    How did it come to be that you had it to show Mr. Card

22   rather?

23   A    One of the officers texted it to me to my phone.

24         MS. CLARKSON:  Nothing further.

25         THE COURT:  It was texted to your cell phone?

sai

EXHIBIT "E"

1

```
------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK  :

                    PLAINTIFF,        :

        -against-                     :   06712/2015

MICHAEL PERKINS                       :

                    DEFENDANT.        :

------------------------------------x
```

AUGUST 27, 2015

KENNETH P. THOMPSON, ESQ., DISTRICT ATTORNEY, KINGS COUNTY

OWEN SUCOFF, ESQ., Assistant District Attorney

ANDREW RODEN

ASSOCIATE REPORTER

STENOGRAPHER (D.A.)

A.R.

```
 1                      JORDAN CARD, RECALLED

 2

 3       Q.    Okay.

 4             Jordan, just a few follow-up questions.

 5             You testified that this guy that came up to you

 6       after you left the bar and walked along with you,

 7       pushed you up against a fence, correct?

 8       A.    Yes.

 9       Q.    Could you talk in a little bit more detail about

10       how that happened?

11       A.    He had -- right when he had said, "you made

12       me walk all this way for nothing," he grabbed my wrists

13       and pushed me up against that way, and at some point,

14       he had his hand up against my shoulder holding me up

15       like that.

16       Q.    At any time, did you see whether this man was

17       holding any kind of weapon or other object?

18       A.    I did not see a weapon or any other object.

19       Q.    Now, you testified that at some point during your

20       walk home the police stopped to talk with this guy.

21             Can you talk a little bit -- explain a little bit

22       about why you didn't just keep walking away?

23       A.    At the time, I was intoxicated and I didn't

24       feel immediately threatened by this person, and I

25       wanted to stay around and make sure nothing bad had
```

EXHIBIT "F"

Complaint# 2015-077-05050

| COMPLAINT - FOLLOW UP INFORMATIONAL REPORT - GENERAL INVESTIGATION | | | Crime/Condition ROBBERY | Command 077-77TH PRECINCT Date of This Report 08/23/2015 |
|---|---|---|---|---|
| Date of UF61 08/09/2015 | Date Case Assigned 08/09/2015 | Complaint No. 2015-077-05050 | Case No. 2015 - 406 | Unit Reporting BRAM | Follow-Up No. 16 |

| Complainant's Name CARD, JORDAN | | Address | | Apt No. |
|---|---|---|---|---|
| Nickname/Alias/Middle Name | | | | |
| Sex MALE | Race | Date of Birth | Age | |
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |

| Activity Address Location OFFICE | | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|---|
| Cross Street | | | Intersection of and | | Premise Type | |

**Activity Date** 08/22/2015     **Activity Time** 17:45

**Topic/Subject:**
LAWYER REQUEST AND INFORMATION BY PERPETRATOR

**Summary of Investigation:**
1. On August 22, 2015, at approximately 1745 hours Michael Perkins did provide me with his lawyers name and requested a lawyer on his behalf.

- Legal Aid Society- Melissa Megrane ( Criminal Defense Lawyer) 49 Thomas Street NY, NY (Tel)

2. Submitted for your information

| Reporting Officer: | Rank POM | Name ANTHONY LAFEMINA | | Tax Reg. No. | Command 297-77 DET SQUAD |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed 08/27/2015 | Date of Next Review | Name PATRICK HAMILTON | Supv. Tax No. |

EXHIBIT "G"





EXHIBIT "H"

1    Q    Did there come a time that Mr. Card was brought

2  into the viewing room to view the lineup?

3    A    Yes.

4    Q    And when was that?

5    A    Approximately, 12:30.

6    Q    Did you say anything to Mr. Card before he viewed

7  the lineup?

8    A    Yes.

9    Q    What did you say to him?

10    A    I read him the lineup instructions report.

11    Q    Can you please read those instructions the way you

12  read them to Mr. Card.

13    A    "As a part of our ongoing investigation into a

14  crime that occurred in front of 612 Prospect Place on August

15  9, 2015, you are about to view a lineup.  You will look

16  through a one-way mirror and see six people in the lineup.

17  They will not be able to see you.

18         Each person on the other side of the mirror will

19  have a painted number situated above their head or will be

20  holding a card with the number on it.  Take whatever time you

21  want to view the lineup.  The perpetrator may or may not be

22  among the six people in the lineup.

23         Do not assume I know who the perpetrator is.  Do

24  not ask me or anyone else in the room for guidance during the

25  procedure.  Individuals presented in the lineup may not

1    appear exactly as they did on the date of the incident

2    because features such as head and facial hair are subject to

3    change.

4            After you had the opportunity to view the lineup, I

5    will ask you the following three questions:

6            Do you recognize anyone?

7            If you do, what is the number of the person you

8    recognize?

9            From where do you recognize the person?

10           I'm going to ask you follow-up questions.  After

11   the identification procedure is concluded, do not discuss

12   with other witnesses what was said or observed during this

13   identification procedure."

14       Q    After you read Mr. Card these instructions, what

15   did you do next?

16       A    I had Mr. Card initial and date the form, and then

17   I signed the form at the bottom.

18       Q    After that paperwork was done, what did you do?

19       A    I escorted the complainant into the viewing room.

20       Q    What was Mr. Perkins' demeanor at that time?

21       A    Mr. Perkins refused to pick his head up.

22       Q    And so --

23           MS. RAMEAU:   What time are we referring to, your

24       Honor?  I'm not sure.

25           MS. HILL CLARKSON:   When Mr. Card was brought into

1        the room.

2            THE COURT:    I believe the witness already

3        testified it was 12:30 p.m.; is that correct?

4            THE WITNESS:    Approximately, 12:30.

5    Q    What action did you take to try to get Mr. Perkins

6    to lift his head for the lineup?

7            THE COURT:    Was this when the witness was looking

8        through the window or before he entered the viewing

9        area?

10            THE WITNESS:    The witness was already in the

11        viewing room.

12    Q    So, what steps, if any, did either you or other

13    officers take to try to get Mr. Perkins to lift his head for

14    the lineup.

15    A    I had asked my partner to try and lift Mr. Perkins'

16    head up so that the complainant could get a view of the

17    perpetrator's face.

18            THE COURT:    I'm sorry.  This is your partner?

19            THE WITNESS:    That's correct.

20            THE COURT:    And what is his name?

21            THE WITNESS:    His name is Detective Hickey

22        (Phonetic).  His first name is Joseph.

23    Q    So, at the time that Mr. Card viewed the lineup,

24    was the defendant's face visible to him?

25    A    Not prior to lifting his head up.

1          THE COURT:   Just a minute.   Did Detective Hickey

2     physically put his hands on the defendant's face and try

3     to lift his face up?

4          THE WITNESS:   No.   He mainly had the top of his

5     head trying to lift his head and pull it up.

6          THE COURT:   Was there a struggle?

7          THE WITNESS:   Yes, there was.

8          THE COURT:   Okay.

9     Q     Was Detective Hickey able to lift the defendant's

10    head so that Mr. Card could see the defendant's face during

11    this lineup?

12    A     Yes.

13    Q     And --

14         THE COURT:   He was able to lift the defendant's

15    head?

16         THE WITNESS:   Yes.   For a brief second.

17    Q     After that happened, did you ask Mr. Card any

18    questions?

19    A     Yeah.   I asked him did he recognize anyone.

20    Q     And what was his response?

21    A     Yes.   Number four.

22    Q     And did you ask him anything further?

23    A     I asked him from where do you recognize the person.

24    And he stated that was the person who robbed me.

25         MS. HILL CLARKSON:   I would like to have the