```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MICHAEL PERKINS,

                          Plaintiff,                        **MEMORANDUM AND ORDER**

           - against -                                      17-CV-423 (RRM) (PK)

NEW YORK CITY, *et al.*,

                          Defendants.
------------------------------------------------------------------------x
```
ROSLYNN R. MAUSKOPF, United States District Judge.

*Pro se* plaintiff Michael Perkins ("Perkins" or "Plaintiff") brings this civil rights action against six members of the New York City Police Department ("NYPD") who allegedly subjected him to unduly suggestive identification procedures, used excessive force in order to compel his participation in a lineup, and falsified police reports and suppression hearing testimony relating to Perkins' use of a weapon during an August 9, 2015, robbery. The defendants – Sergeant Jackson, Detectives Anthony Lafemina and Joseph Hickey, and Officers Christian Valenzuela, Keenen Adams-Edwards, and Jonathan Diaz-Mojica (collectively, "Defendants") – now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss various constitutional claims which they perceive as having been raised in Perkins' Second Amended Complaint (the "SAC"). For the reasons stated below, Defendants' motion is granted in part and denied in part and Perkins is granted leave to file a third amended complaint within thirty (30) days of the date of this Memorandum and Order.

## BACKGROUND

Unless otherwise indicated, the following facts are taken from the SAC (Doc. No. 31), the non-conclusory allegations of which are assumed to be true for purposes of this Order. On the evening of August 9, 2015, Jordan Card reported to the police that he had been robbed. (SAC at 3 & Ex. A.) After interviewing Card, who described the perpetrator as a black man with

a "lazy eye," Officers Valenzuela, Adams-Edwards, and Diaz-Mojica showed Card a single photograph of Perkins and asked him if it depicted the perpetrator. (*Id.*) Card answered in the affirmative. (*Id.*)

Shortly thereafter, Detective Lafemina prepared a six-person photo array, placing the photograph Card had just seen in position number 4. (*Id.* at 3 & Ex. B.) Lafemina showed the array to Card about 45 minutes after Card had first identified Perkins' picture. (*Id.*) Card again identified Perkins. (*Id.*)

Later on August 9, Officers Adams-Edwards and Diaz-Mojica prepared police reports which, according to Perkins, contained false information. Adams-Edwards reported that Perkins was in possession of a boxcutter and Diaz-Mojica reported that Card claimed to have been robbed at knifepoint. (*Id.* at 4–5 & Exs. C, D.) The latter report was inconsistent with Card's grand jury testimony, in which he denied having seen a weapon or any other object in the perpetrator's hand. (*Id.* at 5 & Ex. E.) The two officers later repeated these allegedly false statements at a pre-trial *Wade* hearing.

On the evening of August 22, 2015, while in police custody, Perkins informed Lafemina that he was already represented by The Legal Aid Society's Criminal Defense Division, provided the detective with his attorney's contact information, and "invoked his right to counsel." (*Id.* at 4 & Ex. F.) Nonetheless, sometime on August 23, 2015, Lafemina asked Perkins to sit in a lineup without his attorney present. (*Id.* at 4.) When Perkins refused, Lafemina and other officers "assaulted" him and forced him to participate. (*Id.*) According to the SAC, the officers handcuffed him to a wall and placed him in leg irons, then placed him in seat number 4 – the same position in which Perkins' photograph appeared in the photo array. (*Id.*)

According to Perkins, the restraints forced him to sit in a "bent position." (*Id.*) Since Perkins' face was not visible to those viewing the lineup, Detective Hickey entered the room in

which he and the fillers were seated, placed Perkins in a headlock, and lifted Perkins' head. (*Id.*) Hickey took these actions while Card was viewing the lineup. (*Id.*) Card identified Perkins. (*Id.* at Ex. H, p. 31.)

The Court will take judicial notice of the fact that, on August 23, 2015, Lafemina signed a Criminal Court complaint charging Perkins with two counts of robbery in the first degree, one count of assault in the first degree, and 16 lesser offenses. He was subsequently indicted on 14 counts, including the two counts of robbery in the first degree and the count charging assault in the first degree.

This Action

Over one year after his arrest, Perkins commenced this civil rights action. The caption of his original complaint (Doc. No. 1) – which was allegedly delivered to prison authorities at the Brooklyn Detention Complex on November 16, 2016, but not filed until January 24, 2017 – listed six defendants: The City of New York, Detective Lafemina, Sergeant Jackson, Officer Valenzuela, and two John Does. However, the body of the complaint listed the "Commander or Chief or Commissioner" of the New York City Police Department as a defendant, in lieu of the City of New York.

The original complaint contained the allegations regarding the August 9, 2015, photographic identification procedures and the August 23, 2015, lineup which are discussed above. However, the pleading did not specifically allege any constitutional violations with respect to the identification procedures, other than to allege that Lafemina violated Perkin's Eighth and Fourteenth Amendment rights by assaulting him, placing him in handcuffs and leg irons, and forcing him to participate in the lineup. The pleading specifically accused Sergeant Jackson of failing to supervise his subordinates, but did not contain any allegations concerning

3

the City or the NYPD Commissioner. The complaint sought $5.5 million for the violation of Perkins' constitutional rights.

On December 6, 2016, after being transferred to Rikers Island, Perkins delivered an amended complaint to the prison authorities which – like the original complaint – was filed on January 24, 2017. The amended pleading was almost identical to the original complaint, with three exceptions. First, it added a paragraph alleging that Perkins provided Lafemina with his attorney's contact information and invoked his right to counsel on August 22, 2015. (Am. Compl. (Doc. No. 3) at 3–4.) Second, it added a paragraph explaining that the NYPD "Commander and Chief and Commissioner" had failed to "properly train" the officers who violated his Eighth and Fourteenth Amendment rights. (*Id.* at 4.) Third, it requested punitive damages of $11 million in addition to the $5.5 million in "actual damages." (*Id.* at 4–5.)

In a *sua sponte* order dated June 20, 2017, the Court granted Perkins permission to proceed *in forma pauperis*, but dismissed his claims against the City and the NYPD Commissioner. The Court directed service of process on the remaining three defendants and issued a *Valentin* order, requesting that the Corporation Counsel assist Perkins in identifying the Doe defendants.

Corporation Counsel did not immediately comply with the *Valentin* order. Rather, Corporation Counsel moved to stay the case pending the outcome of Perkins' state-court criminal proceedings. As a result, the case remained stayed until sometime after September 29, 2017, when Perkins was convicted, upon his plea of guilty, of attempted robbery in the third degree and sentenced to two to four years' imprisonment.

In late October 2017, Perkins moved to amend his pleadings to add as defendants several more police officers whose involvement in Perkins' case had been revealed during a pre-trial *Wade* hearing. (Doc. No. 27.) Corporation Counsel consented to the amendment and, in an

order dated December 6, 2017, Magistrate Judge Pollak granted that motion. In that order, Judge Pollak requested that Corporation Counsel provide addresses for the newly named defendants: Detective Hickey and Officers Adams-Edwards and Diaz-Mojica.

### The Second Amended Complaint

Although the SAC repeats the allegations contained in Perkins' prior pleadings, it contains some new allegations. First, it alleges that Officer Adams-Edwards falsified a police report and testified falsely at the *Wade* hearing by claiming that Perkins was in possession of a boxcutter. Second, it alleges that Officer Diaz-Mojica falsified a police report and testified falsely at the *Wade* hearing by claiming that Perkins robbed Card at knifepoint. Third, the SAC adds details regarding Detective Hickey's actions during the lineup, stating that Hickey placed Perkins in a "head-lock" in order to force him to lift his head during the lineup. In support of the first two of these allegations, the SAC attaches excerpts of the *Wade* hearing transcript containing the allegedly false testimony, (SAC, Ex. C, at 81, Ex. D), and a portion of the grand jury transcript in which Card stated that he did not see a weapon or any other object in Perkins' hand, (*id.*, Ex. E). In support of the third allegation, the SAC attaches a portion of the *Wade* hearing transcript in which Lafemina describes a "struggle" during the lineup. (*Id.*, Ex. H).

Like the prior pleadings, the SAC does not contain causes of action. However, the SAC specifically alleges 1) that Lafemina violated Perkins' Sixth Amendment rights by forcing him to sit for a lineup without his attorney present and 2) that Hickey violated Perkins' Eighth and Fourteenth Amendment rights by using excessive force.

### The Motion to Dismiss

The seven points raised in Defendants' Memorandum of Law in Support of the Motion to Dismiss ("Defendants' Memo") are not predicated solely on allegations drawn from the SAC. Rather, they rely in part on facts drawn from documents relating to Perkins' state-court criminal

5

proceedings, which are attached to the Declaration of Christopher G. Arko in Support of Defendants' Motion to Dismiss (the "Arko Declaration"). Those documents include a Criminal Court Complaint signed by Lafemina on August 23, 2015, (Arko Declaration at Ex. E); an NYPD Online Prisoner Arraignment Form, indicating that Perkins was arraigned on the Criminal Court Complaint on August 25, 2015, (*id.* at Ex. I); a state Supreme Court indictment charging Perkins with robbery in the first degree and seven other felonies, (*id.* at Ex. F); excerpts of transcripts of various Supreme Court proceedings, including a *Wade* hearing and a September 18, 2017, appearance at which Perkins pled guilty to attempted robbery in the third degree, (*id.* at Exs. B, C, D, H); and a certificate of disposition reflecting that Perkins was sentenced to two to four years' imprisonment on September 29, 2017, (*id.* at Ex. G).

Five of the seven points raised in Defendants' Memo rely on the evidence in the Arko Declaration. First, relying on evidence that Perkins pled guilty, Defendants argue that any constitutional claims arising from the suggestive identification procedures must be dismissed because the identification evidence was never presented at a trial. Second, relying on the transcript of the *Wade* hearing, Defendants argue that Perkins is collaterally estopped from asserting any claims relating to the constitutionality of the identification procedures, since these claims were already resolved in state court. Third, again relying on evidence that Perkins pled guilty, Defendants argue that the claims that Adams-Edwards and Diaz-Mojica fabricated evidence do not rise to the level of a constitutional violation because Perkins was not deprived of his liberty as a result of the fabrication. Fourth, relying on evidence that Perkins had not been arraigned at the time of the lineup, Defendants argue that Perkins' Sixth and Fifth Amendment rights were not violated when he was forced to sit for a lineup without his attorney present. Fifth, relying on evidence that Perkins was not convicted until September 2017, Defendants argue that any Eighth Amendment claims relating to the events of August 2015 must fail.

The remaining two arguments do not rely on the evidence attached to the Arko Declaration.  First, Defendants argue that the non-conclusory allegations of the SAC are insufficient to state an excessive force claim.  Second, Defendants argue that the supervisory liability claims fail because Perkins 1) has not established a constitutional violation by any other defendants and 2) has not established personal involvement by Sergeant Jackson.

Perkins has not responded to Defendants' motion to dismiss, despite ample opportunities to do so.  However, "the failure to oppose does not, by itself, justify dismissal." *Burnham v. U.S. Customs*, No. 2:12-CV-157, 2013 WL 1345154, at *1 (D. Vt. Apr. 2, 2013) (citing *Goldberg v. Danaher*, 599 F.3d 181, 183–84 (2d Cir.2010); *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000)).  "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall*, 232 F.3d at 323.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In considering such a motion, courts must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 590 (2d Cir. 2006).  However, this tenet "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In addition, in reviewing the sufficiency of the allegations in this case, the Court must be mindful that a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

7

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A complaint is properly dismissed where, as a matter of law, 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Hayles v. Aspen Properties Grp., LLC*, No. 18-2683, 2019 WL 3283051 (2d Cir. July 22, 2019) (summary order) (quoting *Twombly*, 550 U.S. at 558). "A pleading that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint ... or, more accurately, the sufficiency of the statements in the complaint," *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (internal citations omitted), *cert. denied sub nom. Cortec Indus., Inc. v. Westinghouse Credit Corp.*, 503 U.S. 960 (1992), only certain matters outside of the four corners of a plaintiff's pleading may be considered in assessing the complaint's sufficiency. When determining the sufficiency of a plaintiff's claim for Rule 12(b)(6) purposes, "consideration is limited to the factual allegations in [the plaintiff's pleading] ..., to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [the plaintiff's] possession or of which [the plaintiff] had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec*, 949 F.2d at 47-48).

Under the Federal Rules of Evidence, courts may only take judicial notice of facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). Such facts must either be "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* "It is well established that a court considering a motion pursuant to Rule 12(b)(6) may take

judicial notice of arrest reports, certificates of disposition, criminal complaints, DD5s, and indictments." *McLennon v. New York City*, No. 13-CV-128 (KAM) (SMG), 2015 WL 1475819, at *4 (E.D.N.Y. Mar. 31, 2015) (citing *Liang v. City of New York*, No. 10–CV–3089 (ENV) (VVP), 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013)). However, where a court takes judicial notice of such documents, it does so only "in order to determine what statements [the public records] contained ... not for the truth of the matters asserted." *Monroe v. Myskowsky*, No. 12-CV-5513 (KPF), 2014 WL 496872, at *1 n.3 (S.D.N.Y. Feb. 6, 2014) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). Similarly, a court "may take judicial notice of the documents filed in state court to establish the existence of the suppression motion and its denial, but not for the truth of the matters asserted therein." *Wheeler v. Slanovec*, No. 16-CV-9065 (KMK), 2019 WL 2994193, at *2 n.4 (S.D.N.Y. July 9, 2019) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

## DISCUSSION

Perkins' SAC specifically alleges that this is a civil rights action brought pursuant to 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)); *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). "To establish a claim under 42 U.S.C. § 1983, a plaintiff must show that there has been a denial of a right, privilege, or immunity secured by the Constitution or laws of the United States and that the deprivation of such right occurred under color of state law." *Watts v. New York City Police Dep't*, 100 F. Supp. 3d 314, 322 (S.D.N.Y. 2015).

The first step in analyzing a § 1983 claim "is to identify the specific constitutional right allegedly infringed." *Albright*, 510 U.S. at 271 (citing *Graham v. Connor*, 490 U.S. 386, 394

9

(1989), and *Baker*, 443 U.S. at 140). The SAC expressly alleges that Lefamina violated Perkins' Sixth Amendment rights by forcing him to sit for a lineup without notifying his attorney, that Lafemina and Hickey violated his Eighth and Fourteenth Amendment rights by using excessive force, and that Sergeant Jackson is liable for these constitutional violations because he or she failed to properly supervise his subordinates. The SAC does not specify the constitutional rights allegedly violated by the unduly suggestive lineup procedures and the allegedly false statements by defendants Adams-Edwards and Diaz-Mojica. Defendants have filled the void by construing these allegations as asserting violations of Perkins' due process right to a fair trial. For purposes of this motion, the Court assumes that Defendants are correct.

A. <u>Suggestive Identification Procedures</u>

The first point in Defendants' Memo argues that Perkins cannot assert that the allegedly suggestive identification procedures violated his due process right to a fair trial because he pled guilty. "A defendant has a due process right not to be the object of suggestive police identification procedures that create 'a very substantial likelihood of irreparable misidentification.'" *United States v. Thai*, 29 F.3d 785, 807 (2d Cir. 1994) (quoting *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992)). As the Second Circuit has explained: "Suggestive procedures are disapproved 'because they increase the likelihood of misidentification,' and it is the admission of testimony carrying such a 'likelihood of misidentification which violates a defendant's right to due process.'" *Wray v. Johnson*, 202 F.3d 515, 524 (2d Cir. 2000) (quoting *Neil v. Biggers*, 409 U.S. 188, 198 (1972)). Thus, it is not a suggestive identification alone that violates the Constitution; "rather, the constitutional violation is that [the criminal defendant's] right to a fair trial was impaired by the *admission* of testimony regarding the unreliable identification." *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir.

2007) (emphasis added). In other words, "the due process focus is principally on the fairness of the trial, rather than on the conduct of the police." *Wray*, 202 F.3d at 524.

In this case, the Court will take judicial notice of the fact that a state-court judge suppressed evidence of the photo array and lineup identifications. (*See* Arko Declaration, Ex. C (Doc. No. 74-3) at 130.) The judge did not suppress the identification evidence relating to the photographic showups, in which a single picture of Perkins was displayed to witnesses. However, that evidence was not admitted at trial because Perkins pled guilty. Accordingly, even if Defendants engaged in unduly suggestive identification procedures, these actions did not violate Perkins' due process right to a fair trial.

Even if the tainted evidence had not been suppressed and had been introduced a trial, Perkins would not have a claim for damages against Defendants. "While a constitutional violation occurs when an unduly suggestive identification is admitted at trial, a plaintiff may not recover damages for such a violation if there is an intervening cause of that damage." *Delamota v. City of New York*, 683 F. App'x 65, 67 (2d Cir. 2017) (summary order) (citing *Wray*, 490 F.3d at 193–94). In cases in which a trial judge denies suppression of identification evidence notwithstanding unduly suggestive procedures, the trial court's action constitutes such an intervening cause. *See Delamota*, 683 F. App'x at 67; *Wray*, 490 F.3d at 193–94. Accordingly, there is no need to address the merits of the suppression rulings or to consider Point II of Defendants' Memo, which raises the question of whether Perkins is collaterally estopped from challenging these rulings.

B.  The Allegedly Falsified Testimony

Point III of Defendants' Memo argues that because Perkins pled guilty, he cannot assert due process claims against Adams-Edwards and Diaz-Mojica for falsifying evidence in police reports and testifying falsely at the *Wade* hearing. "When a police officer creates false

11

information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). However, "the standard in *Ricciuti* restricts fair trial claims based on fabrication of information to those cases in which an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti*, 124 F.3d at 130). "The deprivation [of liberty] need not be in the form of post-trial confinement." *Soomro v. City of New York*, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016). A plaintiff "can establish a deprivation of liberty through the number of court appearances a plaintiff made post-arraignment, constraints such as bail requirements, a period of incarceration or travel restrictions." *Loftin v. City of New York*, No. 15-CV-5656 (MKB), 2017 WL 3614437, at *8 (E.D.N.Y. Aug. 21, 2017).

In arguing that Perkins has not met the *Ricciuti* standard, Defendants assume that Perkins is seeking to recover for his post-conviction deprivation of liberty. Defendants argue that Perkins' guilty plea was a "superseding cause" of his conviction and imprisonment, which precludes liability for damages arising out of his conviction and incarceration. (Defendants' Memo at 10.) In addition, they argue that the alleged falsehoods – which related solely to Perkins' possession of a weapon during the alleged robbery – were "not material to the crime of which he was convicted, and therefore have no legal relevance to his detention." *Id.* at 11.

The Court agrees with Defendants that Perkins cannot recover for his post-conviction incarceration. Here, as in *Barmapov v. Barry*, No. 09-CV-3390 (RRM) (RML), 2011 WL 32371 (E.D.N.Y. Jan. 5, 2011), that deprivation of liberty "was ultimately caused, not by purportedly

12

fabricated evidence, but by [the plaintiff's] decision to plead guilty." *Id.* at *6. "Plaintiff's guilty plea constitutes a 'superseding cause of [Plaintiff's] conviction and imprisonment,'" precluding Plaintiff from recovering damages arising out of his conviction and incarceration. *Id.* (citing *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999)). Moreover, because Perkins ultimately pled guilty to attempted robbery in the third degree – a charge which does not require proof of possession of a weapon – the alleged fabrications had no apparent effect on Perkins' decision to plead guilty.

Perkins does not allege that he was subjected to pre-conviction deprivations of liberty, much less that such deprivations of liberty resulted from the alleged fabrications. Accordingly, Defendants' motion does not raise – and the Court does not consider – the issue of whether claims arising from pre-conviction deprivations of liberty caused by false police statements could survive a guilty plea.

C. Right to Counsel

The SAC expressly alleges that Lafemina violated Perkins' Sixth Amendment right to counsel by conducting a lineup without Perkins' attorney present. Defendants move to dismiss this Sixth Amendment claim on the ground that Perkins' right to counsel did not attach until he was arraigned on August 25, 2015 – two days after the lineup. In addition, although the SAC does not mention the Fifth Amendment, Defendants argue that any Fifth Amendment claim would be baseless because Perkins does not allege that he was subjected to interrogation or the functional equivalent of interrogation.

1. The Sixth Amendment Claim

It has long "been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972). Judicial proceedings can be

13

initiated "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Black*, 918 F.3d 243, 256 (2d Cir. 2019) (citing *Brewer v. Williams*, 430 U.S. 387, 398 (1977)). Thus, the Supreme Court has "recognized a defendant's right to counsel at postindictment, police-organized identification procedures." *Perry v. New Hampshire*, 565 U.S. 228, 242 (2012) (citing *United States v. Wade*, 388 U.S. 218, 233, 235–36 (1967)). However, the Sixth Amendment does not apply to a stationhouse lineup that occurs "before the defendant had been indicted or otherwise formally charged with any criminal offense." *Kirby*, 406 U.S. at 684.

In this case, it is clear that Perkins was not formally charged until after he was identified at the lineup. Documents attached to the SAC establish that Perkins was placed in the lineup at approximately 12:30 p.m. on August 23, 2015. According to the Criminal Court Complaint, Lefamina did not arrest Perkins or prepare the Criminal Court complaint until after Card identified him at the lineup. Since judicial proceedings had not yet been initiated, Perkins' right to counsel had not yet attached at the time of the lineup and his Sixth Amendment rights were not violated when he was compelled to participate in the lineup without counsel.

The Court notes that the facts alleged in the SAC may make out a violation of New York law. Under New York law, as under federal law, there is "no automatic entitlement to counsel at pre-accusatory, investigatory lineups." *People v. Mitchell*, 2 N.Y.3d 272, 274 (2004). Accordingly, "law enforcement authorities ordinarily are not required to notify counsel of an impending investigatory lineup absent a specific request to do so." *Id.* However, "[e]ven before the commencement of formal proceedings, … the right to counsel at an investigatory lineup will attach … when a defendant in custody, already represented by counsel on an unrelated case, invokes the right by requesting his or her attorney." *Id.* "Once the right to counsel has been triggered, the police may not proceed with the lineup without at least apprising the defendant's

lawyer of the situation and affording the lawyer a reasonable opportunity to appear." *Id.* at 274–75.

The SAC alleges that on August 22, 2015, while at the 77th Precinct, Perkins informed Lefamina that he was represented by The Legal Aid Society, provided the detective with the attorney's contact information, and "invoked his right to counsel." (SAC at 4.) The SAC implies that Lefamina did not contact the lawyer, and forced Perkins to sit for the lineup without his attorney present. However, even if Perkins could establish a violation of New York law, that violation would not support a civil rights claim under 42 U.S.C. § 1983. "Section 1983 provides a civil claim for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state law." *Tshaka v. Benepe*, No. 02-CV-5580 (ILG), 2003 WL 21243017, at *2 (E.D.N.Y. Apr. 9, 2003); *see also Young v. County of Fulton*, 160 F.3d 899, 902 (2d Cir. 1998) (violation of state law does not give plaintiff a § 1983 claim); *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("Clearly, a violation of state law is not cognizable under § 1983.").

2. The Fifth Amendment

The Court does not interpret the *pro se* Plaintiff's pleadings as advancing a Fifth Amendment claim. The Fifth Amendment guarantees that "no person ... shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court "established a number of 'prophylactic rights,' including the right to have counsel present during custodial interrogation, so as to 'assure that the individual is accorded his privilege under the Fifth Amendment to the Constitution not to be compelled to incriminate himself.'" *United States v. Pinto-Thomaz*, 357 F. Supp. 3d 324, 338 (S.D.N.Y. 2019) (quoting *Miranda*, 384 U.S. at 439). However, "[a]bsent a police dominated interrogation, the fifth

15

amendment right to counsel does not attach." *Alexander v. Connecticut*, 917 F.2d 747, 751 (2d Cir. 1990).

In this case, Perkins does not allege that he was interrogated, only that he was compelled to participate in a lineup. The Fifth Amendment right to counsel is not applicable to pre-indictment lineups because the right against self-incrimination is not violated by the exhibition of physical characteristics. *Kirby*, 406 U.S. at 687. Accordingly, the Court does not perceive the SAC as raising a Fifth Amendment Claim.

   D. <u>The Eighth Amendment</u>

Although the SAC expressly alleges that Hickey's use of excessive force during the lineup violated Perkins' Eighth and Fourteenth Amendment rights, Point VI of Defendants' Memo correctly points out that the Eighth Amendment is inapplicable to this case. "[T]he Eighth Amendment's protection does not apply 'until after conviction and sentence.'" *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n. 6 (1989)). The right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

The SAC does not allege or even suggest that Perkins was a convict at the time of the lineup. Accordingly, Perkins' Eighth Amendment claim is dismissed. Defendants have not raised – and the Court does not address – the question of whether the SAC makes out a Fourteenth Amendment due process claim.

   E. <u>The Sufficiency of the Excessive Force and Supervisory Liability Allegations</u>

Defendants raise two arguments relating to the sufficiency of the allegations in the SAC. Point IV of Defendants' Memo argues that the SAC fails to state a claim of excessive force

against either Lafemina or Hickey. Point VI argues that Perkins has not stated a claim for supervisory liability against Sergeant Jackson.

1. Excessive Force Claims

With respect to the first of these arguments, the Court agrees with Defendants that some of the excessive force allegations against Lafemina are conclusory. Plaintiff alleges that Lefamina and other officers "assaulted" him before handcuffing him and placing him in leg irons. (SAC at 4.) "[A]ssault is a legal conclusion," *Santiago v. City of New York*, No. 15-CV-517 (NGG) (RER), 2016 WL 5395837, at *3 (E.D.N.Y. Sept. 27, 2016), *aff'd*, 697 F. App'x 36 (2d Cir. 2017), and "conclusory allegations about the alleged assault requires dismissal … for failure to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Santiago v. City of New York*, 697 F. App'x 36 (2d Cir. 2017) (quoting *Twombly*, 550 U.S. at 570). Accordingly, any excessive force claim relating to this alleged assault is dismissed.

Conversely, the allegations that Lefamina handcuffed Perkins to the wall and placed him in leg irons and the allegations that Hickey placed Perkins in a headlock and lifted his head during the lineup are not conclusory. Indeed, the incident involving Hickey is not only described in some detail in the body of Perkins' pleading, (SAC at 4), but is also described by Lafemina in that portion of the *Wade* hearing transcript which is attached to the SAC as Exhibit H, (SAC, Ex. H at 31). While Perkins does not allege that he suffered any physical injury as a result of these actions, physical injury is not an element of an excessive force claim. *See, e.g.*, *Burgos v. Aragone*, No. 09-CV-3900 (GAY), 2013 WL 5526583, at *5 (S.D.N.Y. Sept. 30, 2013) (denying summary judgment on excessive force claim despite the absence of any evidence of injury); *Hart v. Binghamton*, No. 3:10-CV-1064, 2012 WL 1565085, at *5 (N.D.N.Y. May 2, 2012) ("Excessive force is defined relative to the force reasonably believed necessary under the circumstances, and is not determined by the nature of the resulting injuries sustained."). Indeed,

17

"a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 317 (2d Cir. 1999). Accordingly, Defendants' motion to dismiss the excessive force claims arising from these specific allegations is denied.

   2. Supervisory Liability

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). "[T]he general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required." *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973). Thus, "a plaintiff 'must show some tangible connection between the constitutional violation alleged and [a] particular defendant.'" *Griffin v. Doe*, 71 F. Supp. 3d 306, 318 (N.D.N.Y. 2014) (quoting *Toole v. Connell*, 9:04-CV-724 (LEK/DEP), 2008 WL 4186334, at *6 (N.D.N.Y. Sept. 10, 2008)).

In this case, Perkins claims against Sergeant Jackson appear to rest solely on the doctrine of *respondeat superior*. The SAC contains no factual allegations regarding Jackson, except for the conclusory allegations that he "fail[ed] to supervise his subordinates." (SAC at 4.) The SAC does not even allege that he was present at the precinct during the lineup, much less that he was involved in the identification procedure. Accordingly, the supervisory liability claim against Jackson is dismissed. *See Diggs v. Wood*, No. 9:16-CV-554 (DNH/DJS), 2018 WL 4627120, at *4 (N.D.N.Y. Aug. 16, 2018), *report and recommendation adopted*, 2018 WL 4623555 (N.D.N.Y. Sept. 26, 2018) (dismissing a supervisory liability claim against a Corrections Sergeant in the absence of any "specific allegation" tying the sergeant to the alleged assault).

3. Leave to Amend

Although the Court dismisses the claim against Sergeant Jackson and the claim against Detective Lafemina arising from the allegation that he "assaulted" Perkins, the Court grants Perkins leave to amend his complaint. "A district court should grant a *pro se* litigant leave to amend 'at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Ganley v. City of New York*, 734 F. App'x 784, 786 (2d Cir. 2018) (summary order) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Since the SAC alleges that Perkins was unwilling to participate in the lineup without his attorney and since the excerpt of Lafemina's hearing testimony which is attached to the SAC concedes that physical force was used in connection with the lineup, there is at least some indication that Perkins may be able to state a valid claim of assault against Lafemina. Moreover, the fact that Perkins has specifically named Sergeant Jackson – despite the fact that his rank does not appear on any of the paperwork attached to the SAC – suggests that Jackson may have been personally involved in the events that transpired at the precinct on August 22 and 23, 2015.

## CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion to dismiss 1) due process claims relating to the identification procedures and the allegedly false statements by defendants Adams-Edwards and Diaz-Mojica, 2) Sixth Amendment claims (and Fifth Amendment claims, if any) relating to the lineup, 3) all Eighth Amendment claims, 4) any excessive force claims stemming from the allegation that Lefamina and other officers "assaulted" Perkins, and 5) the supervisory liability claim against defendant Jackson. The motion to dismiss is denied in all other respects.

In light of Perkins' *pro se* status, the Court grants Perkins leave to amend his excessive force and supervisory liability claims. In amending his complaint, Perkins shall not re-allege the

Fifth, Sixth, and Eighth Amendment claims discussed above, or the due process claims relating to the identification procedures and the allegedly false statements by Officers Adams-Edwards and Diaz-Mojica. However, if Defendants or this Court have misconstrued the constitutional claims Perkins is seeking to raise, he can allege new claims based on the facts alleged in the SAC.

The amended complaint – which shall be captioned "Third Amended Complaint" and bear Docket Number 17-CV-423 (RRM) (CLP) – shall be filed within thirty (30) days of the date of this Memorandum and Order. If filed, the Third Amendment Complaint will supersede all prior pleadings, so Perkins must re-allege all relevant facts. In addition, Perkins should state separate causes of action for each of the constitutional violations he is alleging. If the Third Amended Complaint is not filed, or not filed within the time allowed, the case will proceed only with respect to those Fourteenth Amendment excessive force claims as to which the allegations in the SAC were sufficient.

This action is re-committed to the assigned magistrate judge for all pre-trial proceedings.

The Clerk of Court is directed to send to Perkins by overnight mail a copy of this Memorandum and Order and note that mailing on the docket sheet.

SO ORDERED.

Dated: Brooklyn, New York
      September 27, 2019

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge